IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DENISE MCVEA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SAPD OFFICER T. SWAN, SAPD OFFICER | § | 5:14-CV-073-RP |
| SCOTT, SAPD OFFICER BARRAJAS, | § | |
| UNKNOWN OFFICER 1, SAN ANTONIO | § | |
| POLICE DEPARTMENT, CITY OF SAN | § | |
| ANTONIO | § | |
| | § | |
| Defendants. | § | |

## ORDER AND OPINION

Before the Court are Defendants Joseph Swan and Daniel Scott's Motion for Summary Judgment, filed January 5, 2015 (Dkt. #62); Defendant City of San Antonio's Motion for Summary Judgment, filed January 5, 2015 (Dkt. #63); Plaintiff Denise McVea's Response to Defendants' Motions for Summary Judgment, filed February 23, 2015 (Dkt. 75); Defendants Joseph Swan and Daniel Scott's Reply to Plaintiff's Response, filed March 2, 2015 (Dkt. #78); and Defendant City of San Antonio's Reply to Plaintiff's Response, filed March 2, 2015 (Dkt. #79). Additionally, the Court now considers Plaintiff's Motion to Strike, filed February 22, 2015 (Dkt. #74) and Plaintiff's Motion for Sanctions and Request for Default Judgment, filed April 23, 2015 (Dkt. #81). After thoroughly considering the motions, briefs, relevant case law, and entire record in this case, the Court finds that Defendants' motions for summary judgment should be granted and that Plaintiff's motion to strike and motion for sanctions should be denied.

## BACKGROUND

Plaintiff Denis McVea alleges she is the founder and executive director of the Auris Project, a nonprofit organization that "assist[s] poor and otherwise marginalized communities gain access to key rights and development information." (Resp., Ex. A ("McVea Aff.") ¶ 3). On

1

January 21, 2013, Ms. McVea decided to have a sale—or as she describes it, a "flea-market"—to get rid of surplus donations that the nonprofit had accumulated over the years. (City's Mot. Summ. J., Ex. G ("McVea Depo."), at 63). Ms. McVea and a couple of volunteers put out several hundred items for sale in a grassy lot located at 1614 Martin Luther King Drive, in San Antonio, Texas—a location on the route of the Martin Lither King Day March that was coming through later that morning. (McVea Aff. ¶ 4-5; Am. Compl., at 8-11). This property consists of an empty grassy lot (where the sale was occurring) and a commercial structure with a garage facing the lot. (McVea Depo., at 149-51). The empty lot sits directly behind a house located at 402 Meerscheidt Street and is so close back of the residential property that the lot appears to be the house's backyard.[1] (*See id.*, at 133-35, 149-51). Ms. McVea claims that 1614 Martin Luther King Drive was the Auris Project's place of business.[2]

On the morning of the sale, "a drunken vendor across the street began playing loud music and making lewd gestures to the volunteers." (McVea Aff. ¶ 5). After this person refused to turn down his music, either Ms. McVea or one of the volunteers called the police. (*Id.*). Shortly thereafter, San Antonio Police Department ("SAPD") Officer Joseph Swan arrived at the scene. (*Id.* at ¶ 6). Officer Swan asked to see a permit for Ms. McVea's "garage sale"—something Ms. McVea did not have. (*Id.*) Instead, Ms. McVea told Officer Swan that she did not need a permit because (1) the sale was a "business event" not a garage sale, (2) this was commercial property, not residential property, and (3) the Auris project was registered with the state and thus was permitted to conduct its business without undue interference from police. (*Id.*).

---

[1] At one point during her deposition, Ms. McVea even refers to the grassy lot where the sale was occurring as "the backyard of 402 Meerscheidt" rather than part of the property with the commercial structure and garage. (McVea Depo., at 134).

[2] Ms. McVea claims title to the property through "adverse possession." (McVea Depo., at 65). She admits, however, that she has not been on the property long enough to establish adverse possession. (*Id.* at 68). And, although Ms. McVea claims that the case is currently pending, a Bexar County District Court has already quieted the title of the property to a third party and ordered Ms. McVea to vacate the premises. (City's Mot. Summ. J., Ex. H).

After being unable to convince Officer Swan that the sale was actually a business operation, Ms. McVea asked to speak to Officer Swan's supervisor. (Officer's Mot. Summ. J., Ex. A ("Swan Aff."), at 1). Sergeant Daniel Scott arrived a short time later, and after being briefed on the matter, asked Ms. McVea for some evidence that the sale was, indeed, a business event. (McVea Aff. ¶ 6-7). After first explaining that she generally did not keep the Auris Project's documents on the property, Ms. McVea went into the commercial structure to look for "something with the Auris Project's name on it." (McVea Aff. ¶ 7). Sergeant Scott followed Ms. McVea into the structure, and waited while she searched through some papers.[3] The only evidence Ms. McVea was able to produce, however, was a check with the Auris Project's name on it. (McVea Aff. ¶ 7).

Shortly thereafter, Sergeant Scott told Ms. McVea that he was going to call the City's Code Compliance Office. (Officer's Mot. Summ J., Ex. C ("Scott Aff."), at 1). At the time—and throughout this lawsuit—Ms. McVea expressed doubt that Sergeant Scott was actually calling the Code Compliance Office because she claims that this office would have been closed for Martin Luther King Day.[4] (McVea Aff. ¶ 8).

When Sergeant Scott returned, he told Ms. McVea that she would be getting a citation for having a garage sale without a permit, and that she would be required to sign the citation. (McVea Aff. ¶ 9). Ms. McVea claims that the officers told her that by signing she would be

---

[3]  There is some dispute as to whether it was Officer Swan or Sergeant Scott that followed Ms. McVea into the structure. Officer Swan claims that he followed Ms. McVea into structure before Sergeant Scott was ever called to the scene. (*Compare* McVean Aff. ¶ 7, *with* Swan Aff., at 2). Which officer entered the structure, however, is irrelevant to the Court's analysis of Ms. McVea's claims. Thus, for clarity, the Court will assume it was Sergeant Scott that entered the commercial structure.

[4]  Ms. McVea has filed a Motion for Sanctions and a Request for Default Judgment (Dkt. #81) because, among other things, Defendants have not provided Ms. McVea a call log that shows who Sergeant Scott called. As this Court previously stated, this issue has been "litigated and ruled upon" several times. (Dkt. #73). Ms. McVea has made this unsuccessful argument so many times, in fact, that United States Magistrate Judge Primomo said that "[f]urther requests for the same would result in sanctions." (Dkt. #60, at 9). Though Ms. McVea's continued filings regarding this discovery dispute are clearly sanctionable, the Court declines to impose such a penalty at this time. Finding no reason to overturn the numerous previous rulings on this issue, however, the Court denies Ms. McVea's Motion for Sanction and Request for Default Judgment.

agreeing to end the sale and return the donations to storage. (*Id.*) So Ms. McVea told the officers that she would sign the citation but that she intended to continue with her event and that the police had no jurisdiction over business events that were not criminal in nature. (*Id.*). But the officers told her that if she signed the citation without shutting down the event, they would be forced to place her under arrest. (*Id.*). Ms. McVea responded that the officers' demand "amounted to coercion, was an unlawful seizure, and that [she] would not comply." (*Id.*).

After Ms. McVea refused to sign the citation, Sergeant Scott ordered Officer Swan to place her under arrest and put her in the back of his patrol car. (Scott Aff., at 2). Ms. McVea claims that the officers then told the two Auris Project volunteers that if all the items on the lawn were not removed within 15 minutes, they too would be arrested. (McVea Aff. ¶ 9). The volunteers followed the officers' instructions and moved the property off the lawn and into either the garage attached to the commercial structure or the house adjacent to the grassy lot.

After her arrest, Ms. McVea was transported to the San Antonio Detention Center, where Officer Swan turned her over to detention center personnel. (Swan Aff., at 2). Ms. McVea was told that she had to wait in the detention center for a magistrate judge to arrive. When the judge finally arrived, however, Ms. McVea was pulled aside, issued a citation and order to appear in court, and released from custody. (McVea Aff. ¶ 9).

Ms. McVea's case was finally set for a jury trial on March 25, 2013. But when she arrived at the courthouse, she was handed a document titled "Dismissal After Motion by Prosecutor," which stated that the cause had been dismissed due to "insufficient evidence." (Resp., Ex. C).

On January 21, 2014, Ms. McVea filed the present lawsuit against Officer Swan, Sergeant Scott, FNU Bernal (later changed to Barrajas), Unknown Officer 1, and the City of San Antonio.[5] Ms. McVea alleges violations of her constitutional rights to be free from arrest,

---

[5] In her complaint, Ms. McVea names the San Antonio Police Department as a defendant. Under Texas law, however, a police department has no independent capacity to be sued. *See Darby v.*

detention, search, and seizure without probable cause. Ms. McVea also brings claims for conspiracy under 42 U.S.C. § 1985, failure to take before a magistrate judge, malicious prosecution, and failure to intervene.

On January 5, 2015, the City of San Antonio, Officer Swan, and Sergeant Scott filed motions for summary judgment. The Court now considers these motions.

## LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. DuPont de Nemours & Co.,* 58 F.3d 193, 195 (5th Cir. 1995). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Estate of Smith v. United States,* 391 F.3d 621, 625 (5th Cir. 2004).

The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 221 (5th Cir. 2011). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir.

---

*Pasadena Police Dept.*, 939 F.2d 311, 313 (5th Cir. 1991). Throughout this litigation, the parties have construed Ms. McVea's claims against the SAPD to be claims against the City of San Antonio, and the Court will continue to do so here.

2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id*.

**B.    Qualified Immunity**

"The doctrine of qualified immunity protects government officials from from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). This immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.*, at 371 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, courts will not deny the immunity "unless 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2083 (2011)). A plaintiff seeking to defeat a qualified immunity defense must show: (1) that the official violated a constitutional right, and (2) that the right was clearly established at the time of the violation. *Id.*

## ANALYSIS

Plaintiff asserts claims against Defendants under 42 U.S.C. § 1983 and § 1985 for false arrest, false detention, illegal search and seizure, and conspiring to violate her constitutional rights. Additionally, Plaintiff asserts claims for failure to bring before a magistrate judge, malicious prosecution, and failure to intervene. (Am. Compl., at 14-20). The Court addresses each of these claims below.

**A.    Probable Cause, False Arrest, and False Detention**

Ms. McVea claims that Defendants arrested and detained her without probable cause. (Am. Compl., at 11). "It is well established that under the Fourth Amendment a warrantless arrest must be based on probable cause." *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013).

> Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. Although probable cause requires more than a bare

>    suspicion of wrongdoing, it requires substantially less evidence than that sufficient to support a conviction.

*United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995) (internal citations omitted). The circumstances of the arrest must be "viewed in light of the observations, knowledge, and training" of the law enforcement officers on the scene. *United States v. Ho*, 94 F.3d 932, 936 (5th Cir. 1996).

Defendants maintain that Officer Swan and Sergeant Scott had probable cause to believe Ms. McVea was conducting a garage sale without a permit, in violation of § 16-296 the San Antonio City Code ("City Code"). *See* SAN ANTONIO CITY CODE § 16-296 ("It shall be a violation of this article for any person to operate or participate in the operation of a garage sale without first obtaining the proper permit from the director."). Ms. McVea, on the other hand, maintains that violating this ordinance—which she calls an "administrative violation"—is not something the officers had statutory authority to arrest her for. (Resp., at 7). And even if the officers did have authority to arrest someone for violating this ordinance, Ms. McVea claims that they lacked sufficient probable cause to believe she had violated it.

As an initial matter, the Court notes that San Antonio police officers do have statutory authority to issue a citation, and sometimes make a custodial arrest, for operating a garage sale without a permit. When statutorily permitted, Texas police officers are allowed to make custodial arrests for violations of municipal codes. *See* TEX. CODE. CRIM. PROC. § 1401(b) ("A peace officer may arrest an offender without a warrant for *any offense* committed in his presence or within his view.") (emphasis added); *see also McGaughy v. City of Houston*, 77 F. App'x 280, 282 (5th Cir. 2003) (holding that a police officer had probable cause to arrest the defendant for a Class C misdemeanor city ordinance fire code violation). Section 25-1 of the City Code states that it is the duty of the police to "enforce and prevent the violation of this Code and all laws of the state and ordinances of the city." SAN ANTONIO CITY CODE § 25-1. Under the City Code, operating a garage sale without a permit is a violation of § 16-296 and is considered

an arrestable offense under § 25-5, which acknowledges that a person can be "arrested by a city police officer for any violation" of the City Code or an ordinance of the city. SAN ANTONIO CITY CODE § 25-5. In general, when an arrest like this is made, the officer would issue a citation, then, after the violator signs the citation, the officer would release the violator from custody. *See* SAN ANTONIO CITY CODE § 25-5(a). In certain circumstances, however, the officer is prohibited from issuing a misdemeanor citation. *See* SAN ANTONIO CITY CODE § 25-1(b)(8). Under SAPD General Manual Procedure 505,[6] officers are not allowed to issue citations when a violator refuses to sign the citation. (Officer's Mot. Summ. J., Ex. C, at 5-6). Thus, when a person refuses to sign a citation for violating a city ordinance, the arresting officer is authorized—or more accurately, required—to make a custodial arrest. (*See id.*).

But just because officers have statutory authority to arrest someone for refusing to sign a citation does not mean Officer Swan and Sergeant Scott had probable cause to arrest Ms. McVea in this situation. And indeed, Ms. McVea argues that the officers "knew that they had no probable cause . . . but took deliberate actions that violated [her] constitutional rights and protections anyway." (Am. Compl., at 8-11). Accordingly, the Court now turns to whether the circumstances within the officers' knowledge at the moment of the arrest were sufficient for a reasonable person to conclude that Ms. McVea was committing an offense. *See Wadley*, 59 U.S. at 512.

Ms. McVea admits she was conducting a sale at 1614 Martin Luther King Drive on the day of the arrest. (Resp., at 3). Ms. McVea also admits that the area where she was having the sale looked like the backyard of a house, (McVea Depo., at 134), and Officer Swan asserts that the property "appeared to be a residence" to him. (Swan Aff., at 1). It is further stipulated that

---

[6] Ms. McVea alleges for the first time in her response to the Defendants' motions for summary judgment that SAPD General Manual Procedure 505 is unconstitutional. This claim, however, is not properly before the Court. *Cutrera v. Board of Sup'rs of Lousiana State University*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Accordingly, the Court will not address the merits of Ms. McVea's constitutional challenge.

8

the items for sale were distributed across the yard, and that that the sale was open to the public. (*Id.*, Ex. B, at 19).  Finally, the officers on the scene knew that holding a garage sale without a permit was a violation of the City Code. (Swan Aff., at 3; Scott Aff., at 2).[7]

Under these circumstances, a reasonable officer could conclude that Ms. McVea was violating the City Code provision that prohibited conducting a garage sale without a permit. Therefore the officers had authority to issue Ms. McVea a misdemeanor citation, and when she refused to sign the citation, to place her under custodial arrest. Although arresting someone for a City Code violation for failing to obtain a garage sale permit may seem heavy-handed, it is well settled that "if an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that it was constitutionally permissible to arrest an individual for failing to wear a seat belt). And in this situation the arrest did not stem from the violation itself, but rather from Ms.

---

[7] In a Motion to Strike (Dkt. #74) filed the same day as her Response to Defendants' Motions for Summary Judgment, Ms. McVea claims that Sergeant Scott lacked the personal knowledge necessary to conclude that there was probable cause because he called someone at the code compliance office to ask about San Antonio's permit requirements. (Mot. to Strike ¶ 8). But this actually cuts against Ms. McVea's argument.  Even if Sergeant Scott originally lacked sufficient information to make a probable cause determination, he remedied this by calling someone to ask about the specifics of the ordinance. And although Ms. McVea argues that the portions of Sergeant Scott's affidavit that discuss this call are hearsay, Sergeant Scott is not offering the employee's statements as proof of the matter asserted. Rather, Sergeant Scott is using the code compliance office employee's statements as further proof that he had probable cause to believe Ms. McVea was violating the City Code. *See Dumans v. Fort Bend County*, No. 4:08-cv-01359, 2009 WL 7808946, at *1 n.5 (S.D. Tex. June 29, 2009) (finding that statements gathered by investigator were submitted as evidence of probable cause, not for truth of the matter asserted); *see also Gonzales v. Thaler*, 643 F.3d 425, 428 (5th Cir. 2011) (holding that arresting officer's statement affirming that the arrestee was the robber was hearsay *because probable cause for the arrest was not in dispute*, and thus the statement could have only been offered as proof of the matter asserted).

In addition to this argument, Ms. McVea claims that several other statements contained in Sergeant Scott's affidavit are inadmissible. While most of these claims are without merit, Ms. McVea is correct about one statement: Sergeant Scott's declaration that "[t]here was probable cause to arrest Ms. McVea."  This is a legal conclusion, not an assertion of a fact, and police officers as lay witnesses are generally prohibited from testifying about legal opinions. FED. R. EVID. 701; *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011).  Therefore the Court grants Ms. McVea's motion to strike insofar as it pertains to this statement and denies it on all other grounds.

McVea's ardent refusal to sign a promise to appear in court.[8]  Therefore, Ms. McVea's claims for false arrest and false detention are dismissed.

**B.      Illegal Search and Seizure of Property**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  "As the text makes clear, 'reasonableness' is 'the ultimate touchstone of the Fourth Amendment.'" *Trent v. Wade*, 776 F.3d 368, 377 (5th Cir. 2015) (quoting *Fernandez v. California*, —— U.S. ——, 134 S.Ct. 1126, 1132 (2014)).  Ms. McVea asserts that her property was both unconstitutionally searched and seized by Officer Swan and Sergeant Scott on the day of the arrest.  (Am. Compl., at 11-12).

**1.  Search of Ms. McVea's Property**

In general, warrantless searches are *per se* unreasonable under the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).   But this bedrock principle of constitutional law is subject to several specific exceptions.  *Id.*  For example, an officer acts with objective reasonableness in entering a house to effectuate an arrest if he has probable cause to believe the person has committed a criminal offense.  *Graham v. Connor*, 490 U.S. 386, 396 (1989).  Likewise, the presence of exigent circumstances may permit a search or seizure without a warrant.  *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971).   Finally, of course, entry is unobjectionable if the property owner's consent is obtained.  *Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991) (clearly reasonable for police to conduct search once permitted to do so); *Schneckloth,* 412 U.S. at 219 (same).

---

[8]    While Ms. McVea concedes that she refused to sign the misdemeanor citation, she claims that she has a justifiable reason for doing so: the officers said that if she signed, she would have to shut down the sale, and the officers had no authority to do this.  First, the Court notes that San Antonio police officers are charged not only with "enforcing" the City Code, but also with "preventing [its] violation."  SAN ANTONIO CITY CODE § 25-1.  Regardless, it is undisputed that Ms. McVea was presented a misdemeanor citation, and that she refused to sign it.  Therefore, pursuant to SAPD Manual Procedure 505, the officers were required to arrest Ms. McVea.

Here, it is unclear that Sergeant Scott conducted a "search" of Ms. McVea's property in the first place. While the Court is mindful that "a police officer's mere entry or trespass into a home without consent is enough to constitute a 'search'" under the Fourth Amendment, *Dalcour v. City of Lakewood*, 492 F. App'x 924, 931 (10th Cir. 2012), the circumstances of this particular encounter persuade the Court that no constitutional deprivation took place. First, the sale was outside and open to the public, so there was already a diminished expectation of privacy. Second, it was Ms. McVea who called the SAPD to the scene, so to the extent that her warrantless search claim pertains to the area where the sale was taking place, she invited the officers to the property. Third, although Sergeant Scott did follow Ms. McVea into the commercial structure, he did so without any objection and was never accused of searching through anything while inside. Ms. McVea even engaged the officer while he was inside, showing him a check with the Auris Project's name on it as evidence that she was not conducting a garage sale on residential property. And Fourth, Ms. McVea's claims are based on her contention that the property at issue was *commercial* property, namely, the property of the Auris Project. Thus, she cannot now invoke the same level of Fourth Amendment protections which would be afforded her residence. *See New York v. Burger*, 482 U.S. 691, 700 (1987) (acknowledging that although the protections of the Fourth Amendment extend to commercial property, "[a]n expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home"). Under these particular circumstances, the Court concludes that Sergeant Scott did not violate Ms. McVea's constitutional right to be free from warrantless searches.

But even if this did constitute a violation of Ms. McVea's Fourth Amendment rights, Sergeant Scott is entitled to qualified immunity. As the analysis above indicates, whether Sergeant Scott's entry into the commercial structure constituted a warrantless search is not "beyond debate." Thus because it was not clearly established that this conduct violated the Fourth Amendment, Sergeant Scott is entitled to qualified immunity.

**2. Seizure of Ms. McVea's Property**

To prove an unconstitutional seizure, a plaintiff must first show that there was "some meaningful interference with [his or her] possessory interest in that property." *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobson*, 466 U.S. 109, 113 (1984)). Only if a court concludes that a seizure has occurred will it then consider the seizure's reasonableness—an inquiry requiring "careful balancing of governmental and private interests." *Id.*, at 71 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985)).

As a preliminary matter, the Court questions whether Ms. McVea had a possessory interest in the property that was being sold. Ms. McVea has repeatedly claimed that the auris Project was holding the sale, and therefore it follows that the nonprofit—not Ms. McVea—had the possessory interest in the property.

But even if Ms. McVea did have some possessory interest in the property, the interest was never "meaningfully interfered" with. Ms. McVea only alleges that the Auris volunteers were required to move the property from the lawn into one of the two buildings adjacent to it. (McVea Depo., at 54). And she concedes that when she left the San Antonio Detention Center and returned to the property, all of the Auris project's donations were there. (*Id.* at 52). So the only time Ms. McVea was removed from her property was when Officer Swan lawfully placed her under arrest and transported her to the detention center. This was not a "meaningful interference" with Ms. McVea's possessory interest in her property; thus, Ms. McVea's claim that her property was unconstitutionally seized is dismissed. *Cf. Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (holding that simply moving an object to record a serial number did not "meaningfully interfere" with an individual's possessory interest).

**C.     Conspiracy**

Ms. McVea also alleges that Defendants conspired to deprive her or her constitutional rights under 42 U.S.C. § 1985(3).[9]  Ms. McVea appears to base her claim on three arguments: (1) that there is a wide-spread conspiracy involving the SAPD to deprive poor black residents of their constitutional rights, (2) that the SAPD was retaliating against her for previous lawsuits she has brought against them, and (3) that Officer Swan and Sergeant Scott conspired with a third party on the day of the arrest to deprive her of her right to hold a fundraising sale, as evidenced by Sergeant Scott's phone call to an undisclosed code enforcement officer at the police station. (Am. Compl., at 15-19).

To state a claim under § 1985(3), a plaintiff must allege:

> (1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus.

*Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001).

Despite Ms. McVea's numerous conspiracy allegations, she has been unable to offer any evidence that Officer Swan, Sergeant Scott, the City of San Antonio, or anyone else conspired to deprive her of her constitutional rights.  In fact, Ms. McVea declined to even address these claims in her response to Defendants' motions for summary judgment, claiming that due to the "continued harassment of Plaintiff and the improprieties and irregularities that

---

[9] Ms. McVea also brings a conspiracy claim under §1985(2).  Section 1985(2) proscribes conspiracies "to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified."  42 U.S.C. § 1985(2).  Ms. McVea, however, does not claim that Defendants aimed to interfere with her participation in a judicial proceeding.  Therefore, the Court will focus its analysis on Ms. McVea's conspiracy claim under § 1985(3).

defined the discovery period of this cause of action" she would be "unable to pursue her charge of conspiracy." (Resp., at 2). Regardless, a cursory look at the record makes it clear that no reasonable jury could find for Ms. McVea on her conspiracy claims.

Most importantly, Ms. McVea has been unable to show that any of the Defendants conspired together for any purpose. Although Ms. McVea was thoroughly questioned on the alleged conspiracy during her deposition, she refused to answer questions that asked for concrete details, claiming that the answers were "privileged information related to legal strategy." (McVea Depo., at 56-61). And although Ms. McVea provided the names of many people who were allegedly involved in this conspiracy,[10] she never presented any evidence that these people communicated with—or even knew—each other before or after her arrest. (*See id.*).

Moreover, while all parties stipulate that Sergeant Scott called a third party before making the arrest, Ms. McVea has provided no evidence to suggest that this call was made in furtherance of a conspiracy. In contrast, Sergeant Scott's affidavit testimony explains that he called the City Code Compliance Office to determine whether the ordinance requiring a permit

---

[10]  The following comes from Ms. McVea's deposition and identifies the individuals that she claims conspired against her:

> Q: Now you said that there's a conspiracy. Can you identify for me everybody that you contend is in the conspiracy?
>
> A: I can't give you all of them because I'm going to object to some of them on the basis that in order to give you all of them, I would be giving you privileged legal strategy information.
>
> Q: Well, ma'am, I'm asking you –
>
> A: I can give you—I can give you the stuff that you can handle, which is Swan, Scott, Phelan—these are all SAPD officers. Swan, Scott, Phelan, Freeman, Pelfrey, Mendoza, Combs, Kristina Combs, the attorney, Ofelia Lisa Hernandez, the notary. Eric—Eric Hernandez, her boyfriend or husband. I don't know. Todd Lipscomb. A lawyer by the last name of Loree. Tommy Hernandez. . . . Mark Kosanovich, Michael Siemer, Pablo Rivera, David Galbreath. . . . Barbara Nellermoe, Michael Mery, Antonia Arteaga, Scott Roberts, Tiffany Duong, Diana Gains, Brett Van Galloway, Aaron Eckmann, Matthew Ludwig, Cantu. I can share those with you.

(McVea Depo., at 56-61).

for garage sales was still in effect. (Scott Aff., at 1). Ms. McVea expresses doubt that he was calling the Code Compliance Office because she claims that this office was closed for Martin Luther King Day. (Resp., Ex. A, at 4). But even if Sergeant Scott did not call the Code Compliance Office, Ms. McVea has pointed to no evidence that the call was made in furtherance of a conspiracy to deprive her of her constitutional rights. Therefore, the Court finds that Defendants are entitled to summary judgment on Ms. McVea's conspiracy claims brought under 42 U.S.C. § 1985.

D.     **Failure to Bring Before a Magistrate Judge**

Ms. McVea also claims that Defendants violated her rights under the Texas Code of Criminal Procedure for failing to bring her before a magistrate judge after her arrest. She states that after she was transported to the detention center by Officer Swan, she was told to wait there until the magistrate judge arrived. After the judge arrived, however, Ms. McVea asserts that she was taken out of line, given a citation requiring her to appear in court at a later time, and then released. (Am. Compl., at 11). Defendants do not dispute that Ms. McVea was released before given the chance to appear before a magistrate, but rather argue that she does not have a viable claim against Defendants for these actions.

It is not at all clear that releasing Ms. McVea before she was able to appear before a magistrate judge violated the Texas Code of Criminal Procedure. As stated in Article 14.06(b), "[a] peace officer who is charging a person . . . with committing an offense that is a Class C misdemeanor . . . may, instead of taking the person before a magistrate, issue a citation to the person that contains written notice of the time and place the person must appear before a magistrate." TEX. CODE. CRIM. PROC. 14.06(b). And although under SAPD Manual Procedure 505, Officer Swan was forced to place Ms. McVea under custodial arrest for refusing to sign her citation, the Texas Code of Criminal Procedure makes no requirement that a Defendant must sign a citation before it is issued. So the officer at the detention center may have had authority under Article 14.06(b) to release Ms. McVea before she went before the magistrate judge.

But more fundamentally, the Court finds that Ms. McVea lacks standing to bring this claim. Although the parties did not brief the issue of constitutional standing, the court "must—where necessary—raise [standing issues] *sua sponte*." *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331-32 (5th Cir. 2002). In order to establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

Here, Ms. McVea has failed to establish each of these three elements. Although she was initially denied the opportunity to appear before a magistrate judge, she was provided a citation to appear before the judge at a later date. Moreover, all charges against her were dismissed after a motion by the prosecutor. (Resp., Ex. C). Thus, the only harm that Ms. McVea suffered by being taken to the detention center was being forced to end her sale. But, as explained above, the arresting officers had probable cause to believe Ms. McVea was violating a municipal ordinance, and were required by SAPD procedural rules to make a custodial arrest. And this harm would have been the same regardless of whether or not she had been taken to a magistrate. Therefore, Ms. McVea has suffered no injury in fact—or at least no injury that resulted from the denial of a probable cause hearing—and her claim is not likely to be redressed by a favorable judicial decision. Therefore, Ms. McVea lacks standing to assert a claim for failure to bring before a magistrate judge, and accordingly, this claim is dismissed.

**E.    Malicious Prosecution**

Ms. McVea also alleges that Defendants "violated her constitutional right[ ] to be free from . . . malicious prosecution when they arrested, transported, and detained her under the pretext of not possessing a municipal administrative permit to conduct a garage sale at her place of business." (Am. Compl., at 1). The Fifth Circuit has found, however, that there is no

16

freestanding cause of action under § 1983 for "malicious prosecution." *See Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir. 2003) ("[W]e conclude that no . . . freestanding constitutional right to be free from malicious prosecution exists."). Rather, because the term "malicious prosecution" can be used to describe "a wide range of events attending a filing of criminal charges," courts insist for "clarity in the identity of the constitutional violations asserted." *Id.* Therefore, to the extent that Ms. McVea's malicious prosecution claim is brought under § 1983, her claim is dismissed.

It is possible, however, that Ms. McVea intended to bring a claim for the state law tort of malicious prosecution. Under this theory, Ms. McVea would be required to show that someone "initiate[d] or procure[d] the initiation of criminal proceedings against [her], for an improper purpose and without probable cause therefor." *Id.* (quoting FOWLER V. HARPER, ET AL., THE LAW OF TORTS § 4.1 (3d ed. 1996)). Here, it has already been established that the officers had probable cause to believe Ms. McVea was violating a city ordinance. Thus, Ms. McVea's claim for the state law tort of malicious prosecution is similarly unavailing.

## F. Failure to Intervene

Finally, Ms. McVea claims that Defendants "[f]ailed to intervene to protect plaintiff from violation of plaintiff's civil rights by one or more other defendants." (Am. Compl., at 12).[11] It appears that Ms. McVea is alleging that one or more of the Defendants witnessed a violation of her constitutional or legal rights, but then failed to intervene to stop the violation. To implicate an officer's duty to intervene, however, there must be an underlying unconstitutional or illegal act. *See Spencer v. Rau*, 542 F. Supp. 2d 583, 594 (W.D. Tex. 2007) (holding that because there was no underlying act of excessive force, plaintiff's claim that defendant failed to intervene to prevent excessive force failed). As the analysis above shows, Ms. McVea has failed to

---

[11] Although none of the Defendants directly address Plaintiff's claim for failure to intervene in their motions for summary judgment, Defendants do address the preliminary question of whether there was a constitutional deprivation. Thus, the Court will construe their arguments regarding the underlying constitutional issues as arguments against this claim.

establish that she suffered any constitutional or legal harm, and therefore, her claim for failure to intervene against officer Swan and Sergeant Scott fails.

Likewise, Ms. McVea's claim for failure to intervene against the City of San Antonio fails for the same reason. "Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Social Services*, 426 U.S. 658, 694 (1978)). Again, Ms. McVea has not established that she suffered an underlying violation of her constitutional rights. Therefore she is unable to establish municipal liability under section 1983, and her claim for failure to intervene against the City of San Antonio is dismissed.

### G. Failure to Prosecute

In addition to Defendants Officer Swan, Sergeant Scott, and the City of San Antonio, Ms. McVea brought claims against SAPD Officer FNU Barrajas and "Unknown Officer 1." These Defendants, however, have never appeared in this lawsuit, and all parties in this action have moved forward as if they are no longer part of the litigation. Under these circumstances, the Court finds that it should exercise its discretion to dismiss the action as to these Defendants for failure to prosecute. FED. R. CIV. P. 41(b); *Larson v. Scott*, 157 F.3d 1030, 1031 (5th Cir. 1998) ("A district court *sua sponte* may dismiss an action for failure to prosecute or to comply with any court order.").

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants Joseph Swan and Daniel Scott's Motion for Summary Judgment (Dkt. #62) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant City of San Antonio's Motion for Summary Judgment (Dkt. #63) is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff Denise McVea's Motion to Strike (Dkt. #74) is **GRANTED in part and DENIED in part**.

IT IS FURTHER ORDERED that Plaintiff Denise McVea's Motion for Sanctions and a Request for Default Judgment (Dkt. #81) is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff Denise McVea's claims against Defendants SAPD Officer Barrajas and Unknown Officer 1 are **DISMISSED** for lack of prosecution.

**SIGNED** on July 17, 2015.

_____
ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE